**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHERRI JONES,

                Plaintiff,

vs.                                          Case No. 3:15-cv-821-J-34JRK

AT&T UMBRELLA BENEFIT PLAN NO. 1
and SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

### I.  Status

      This cause is before the Court on Defendants' Motion for Summary Judgment, Statement of Undisputed Facts and Incorporated Memorandum of Law (Doc. No. 58; "Motion for Summary Judgment"), filed August 30, 2017, and Defendants' Motion to Deem Unopposed Defendants' Motion for Summary Judgment (Doc. No. 60; "Motion to Deem Unopposed"), filed October 2, 2017. Plaintiff has not filed a response to either motion. Upon review, the undersigned recommends that the motions be granted for the reasons discussed below.

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

## II.  Procedural History

On June 4, 2015, Plaintiff brought this action pro se pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA") alleging that her short-term disability ("STD") benefits were wrongfully terminated under section 502(a) of ERISA, 29 U.S.C. § 1132(a). Complaint (Doc. No. 1) at 2.[2] On the same date, Plaintiff also moved to proceed in forma pauperis. See Motion to Proceed In Forma Pauperis Pursuant to 28 U.S.C. § 1915 (Doc. No. 2). In the Complaint, Plaintiff named as defendants "AT&T Umbrella Benefit Program No. 1" and "AT&T Disability Income Program/Sedgwick." See Complaint. On July 23, 2015, the undersigned directed Plaintiff to complete and file an Application to Proceed in District Court Without Prepaying Fees or Costs. See Order (Doc. No. 7). Plaintiff did so on August 19, 2015. See Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. No. 8; "Motion to Proceed In Forma Pauperis"). On August 21, 2015, Plaintiff's Motion to Proceed In Forma Pauperis was granted. Order (Doc. No. 9).

On January 4, 2016, the Court directed Plaintiff to show cause why the Complaint should not be dismissed for failure to prosecute, noting that Plaintiff had failed to effect proper service upon the defendants within the 120 days allowed by Federal Rule of Civil Procedure 4(m) without seeking an extension of time in which to do so. See Order (Doc. No. 10) at 1. On January 22, 2016, Plaintiff filed a Response to Order to Show Cause (Doc. No. 11) explaining that she was unaware of the 120-day limit and asking for an extension of time to effect service. Response Order to Show Cause at 1. She stated that she "presented the documents

---

[2]     Plaintiff initially filed the Complaint in the Orlando Division of the United States District Court for the Middle District of Florida. See Complaint (Doc. No. 1). On June 29, 2015, however, the case was transferred to the Jacksonville Division. Order to Transfer (Doc. No. 3).

to the [C]lerk to be served as of . . . January 22, 2016." Id. The Court granted Plaintiff the requested extension, directing Plaintiff to effect service by March 4, 2016. Order (Doc. No. 12), entered January 27, 2016, at 2. On March 4, 2016, Plaintiff filed the Summons in a Civil Action (Doc. No. 13) to be issued as to the defendants named in the Complaint.

On April 8, 2016, AT&T Umbrella Benefit Plan No. 1 filed its Answer and Affirmative Defenses to Plaintiff's Complaint (Doc. No. 18; "Answer") in which it stated it was "improperly identified as AT&T Umbrella Benefit Program No. 1" in the Complaint. Answer at 1 (emphasis added). On October 25, 2016, the undersigned held a status hearing, at which Plaintiff appeared in person and counsel for AT&T Umbrella Benefit Plan No. 1 appeared by telephone. See Clerk's Minutes (Doc. No. 41). At the hearing, Plaintiff orally moved to amend the Complaint to name the proper defendants, see Clerk's Minutes, and the motion was granted, see Order (Doc. No. 43), entered October 27, 2016.

On November 1, 2016, Plaintiff filed an Amended Complaint naming as defendants AT&T Umbrella Benefit Plan No. 1 ("AT&T Plan") and Sedgwick Claims Management Services, Inc. ("Sedgwick") (or collectively "Defendants"). See Amended Complaint (Doc. No. 45). On November 9, 2016, AT&T Plan filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint (Doc. No. 46). On December 8, 2016, Sedgwick filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint (Doc. No. 49).

On August 30, 2017, Defendants filed their Motion for Summary Judgment (Doc. No. 58). On October 2, 2017, Defendants filed their Motion to Deem Unopposed (Doc. No.60), asserting that Plaintiff had failed to file a response by the September 29, 2017 deadline set out in the Case Management and Scheduling Order (Doc. No. 53). See Motion to Deem

Unopposed at 2. On September 19, 2017, the undersigned entered an order directing Plaintiff to file a written response to both motions by November 15, 2017, advising her that if she failed to respond, the Court could deem the motions unopposed. See Order (Doc. No. 61) at 1. A review of the file reflects that Plaintiff has not filed a response to either motion. Accordingly, both motions are deemed unopposed. See Local Rule 3.01(b), United States District Court, Middle District of Florida.

### III. Facts

The following facts are taken from Defendants' submissions,[3] including the Administrative Record (Doc. No. 58-5; " Administrative Record" or "AR"), filed August 30, 2017, that was before Sedgwick at the time it made its final decision to terminate Plaintiff's STD benefits.[4] The Court's review of the submissions is limited to those records specifically cited by Defendants. See Mendenhall v. Blackmun, 456 F. App'x 849, 852 (11th Cir. 2012); see also BFI Waste Sys. v. DeKalb Cty., 303 F. Supp. 2d 1335, 1342 n.5 (N.D. Ga. 2004); Tomasini v. Mt. Sinai Med. Ctr., 315 F. Supp. 2d 1252, 1260 n.11 (S.D. Fla. 2004).

Plaintiff began working with BellSouth Telecommunications, LLC ("BellSouth") on November 16, 1998. Declaration of Terrie Crawford Pursuant to 28 U.S.C. § 1746 (Doc. No. 58-1; "Crawford Declaration") at 2 ¶ 4.[5] Starting in September 2008, Plaintiff worked as a full-

---

[3]     Plaintiff has not submitted any evidence in support of her claim or in opposition to the Motion for Summary Judgment.

[4]     The Administrative Record is referenced in the docket as Exhibit B to the Declaration of Jeremy Siegel. See Declaration of Jeremy Siegel Pursuant to 28 U.S.C. § 1746 (Doc. No. 58-3; "Siegel Declaration") at 3 ¶ 8.

[5]     Terrie Crawford worked at BellSouth from April 21, 1972 through June 4, 2014 and held the position of General Manager at BellSouth from 2009 and 2010. Crawford Declaration at 1 ¶ ¶ 2, 3. As General Manager, Terrie Crawford "supervised the Center Sales Managers who worked at the inbound call (continued...)

time Center Sales Manager at BellSouth's inbound call center in Pensacola, Florida. Crawford Declaration at 2 ¶ 5. On April 1, 2010, Plaintiff's employment was involuntarily terminated. Agreement (Doc. No. 58-1; "Release Agreement") at 1.[6] The Crawford Declaration states that Plaintiff's employment was terminated on April 2, 2010. See Crawford Declaration at 2 ¶ 7. This discrepancy, however, does not affect the undersigned's recommendation.

Plaintiff was a participant in AT&T's Disability Income Program ("Program"), which is a component of the AT&T Plan. Siegel Declaration at 1-2 ¶¶ 2, 3.[7] The Program provides STD benefits for up to twenty-six weeks of disability. Id. at 2 ¶ 4; see also Summary Plan Description (Doc. No. 58-4; "Plan Description")[8] at 6. If a participant exhausts the twenty-six weeks of coverage, he or she is eligible to apply for long-term disability ("LTD") benefits. Siegel Declaration at 2 ¶ 4; Plan Description at 6.

AT&T Services, Inc. is the "Plan Administrator" and Sedgwick is the third-party Claims Administrator for the Program. Siegel Declaration at 2 ¶ 5. "Sedgwick has been delegated complete and exclusive discretionary authority to finally and conclusively interpret and administer the terms of the [Program]." Id. at 2 ¶ 6. AT&T companies are not involved in

---

[5](...continued)
centers . . . ." Id. at 1 ¶ 3.

[6]     The Release Agreement is Exhibit A of the Crawford Declaration. See Doc. No. 58-1. Both were filed under Doc. No. 58-1. Citations to the Release Agreement follow the pagination of the Release Agreement itself, not that assigned by the Court's electronic filing system (CM/ECF).

[7]     Jeremy Siegel is "employed by AT&T Services, Inc. in the position of Associate Director - Benefits, a position [he] ha[s] held since March 15, 2013." Siegel Declaration at 1 ¶ 2. His responsibilities include "directing the activities of team members in such activities as receiving, analyzing and taking appropriate actions to comply with the terms of settlement agreements arising from benefit litigation . . . ." Id.

[8]     The Plan Description is referenced in the docket as Exhibit A to the Siegel Declaration. See Siegel Declaration at 2 ¶ 4.

evaluating participants' entitlement to benefits under the AT&T Plan and have no right to modify decisions made by Sedgwick regarding participants' eligibility for benefits. Id. Benefits under the AT&T Plan are paid from a trust funded by participating AT&T companies. Id. at 2-3 ¶ 7.

Plaintiff sought STD benefits for an absence that began on January 4, 2010. See AR at 61, 117.[9] In January 2010, Sedgwick approved Plaintiff's claim from January 11, 2010 through February 8, 2010. AR at 61, 158.[10] On March 16, 2010, it issued a notice extending Plaintiff's STD benefits through February 24, 2010. AR at 216, 220. But on March 17, 2010, Sedgwick issued a notice declining to extend Plaintiff's STD benefits any further. AR at 218, 222, 232. The following day, Plaintiff submitted an appeal request to Sedgwick, and Sedgwick began a review of the request. AR at 83, 221, 228, 230.

As part of the appeal, Plaintiff's medical records were reviewed by three independent physicians: Dr. Leonard Sonne, see AR at 266-72, 286-87, 293-94 (duplicate); Dr. Jose A. Perez Jr., see AR at 273-77, 288-89, 291-92 (duplicate); and Dr. Raye L. Bellinger, see AR at 281-84, 296-99 (duplicate), 301-04.[11] By letter dated June 4, 2010, Sedgwick notified Plaintiff that it "determined to uphold the denial of benefits . . . ." AR at 308.

_____

[9]     The Administrative Record contains page numbers on the lower right-hand corner of the pages. Citations to the Administrative Record follow this pagination, not that assigned by the Court's electronic filing system (CM/ECF).

[10]     The correspondence is authored by the AT&T Integrated Disability Service Center ("AT&T IDSC"). See, e.g., AR at 158. Since Sedgwick administers the AT&T IDSC, see, e.g., AR at 158, the undersigned refers to the AT&T IDSC as Sedgwick.

[11]     Dr. Sonne and Dr. Perez each gave opinions on May 5, 2010, see AR at 266-72 (Sonne); AR at 273-77 (Perez), which were updated on May 21, 2010 to add a job description and modify the relevant time frame for review, see AR at 286-87, 293-94 (duplicate) (Sonne); AR at 288-89, 291-92 (duplicate) (Perez). It is unclear from the record why the time frame for review was adjusted. Dr. Bellinger gave an opinion on May 21, 2010, see AR at 281-84, 296-99 (duplicate), and on May 25, 2010, see AR at 301-04.

As noted, on April 1, 2010, while the review of the denial was still pending, Plaintiff's employment was involuntarily terminated. Release Agreement at 1. On April 2, 2010, as part of her termination, Plaintiff signed a Release Agreement in which she "waive[d], discharge[d], and release[d]" all claims against BellSouth, AT&T Inc., "their subsidiaries and affiliated companies, and in the case of all such entities, their respective owners, representatives, officers, directors, insurers, attorneys, agents, employees, successors and assigns . . . as a result of actions or omissions occurring through the date [the Release] Agreement [was] executed." Id. at 2 ¶ 4. In the Release Agreement, BellSouth agreed to pay Plaintiff $23,692.82 as severance pay. Id. at 1 ¶ 2. On April 24, 2010, Plaintiff cashed the check containing the severance pay. Declaration of Deirdre Scott Pursuant to 28 U.S.C. § 1746 (Doc. No. 58-2; "Scott Declaration") at 2 ¶ 5.[12]

### IV. Applicable Summary Judgment Standard

Under Rule 56(e), Federal Rules of Civil Procedure, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," a court may grant summary judgment if "the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). "Thus, summary judgment, even when unopposed, can only be entered when 'appropriate.'" United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The

---

[12]     Deirdre Scott is "employed by AT&T Services, Inc., in the position of Director - Financial Analysis, and ha[s] access to payroll information concerning employees and former employees of BellSouth . . . ." Scott Declaration at 1 ¶ 2.

burden of demonstrating the satisfaction of this standard lies with the movant," Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003), who must submit "depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" to show that the facts cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A). An issue is genuine when a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Once the movant has met this initial burden, "the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." Howard v. Memnon, 572 F. App'x. 692, 694 (11th Cir. 2014) (per curiam). "A pro se plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence." Id. In ruling on a motion for summary judgment, a court must "constru[e] the facts and draw[ ] all reasonable inferences therefrom in the light most favorable to the non-moving party." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005) (citing Cuesta v. Sch. Bd. of Miami-Dade Cnty., 285 F.3d 962, 966 (11th Cir. 2002)).

The standard applicable to an ERISA benefit denial case differs, in that, "in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." Curran v. Kemper Nat'l Servs., Inc., No. 04-14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005) (unpublished) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17-18 (1st Cir. 2002)); see also Hopp v. Aetna Life Ins. Co., 3 F. Supp. 3d 1335, 1339 (M.D. Fla. 2014); Howard v. Hartford Life & Acc. Ins. Co., 929 F.

-8-

Supp. 2d 1264, 1286 (M.D. Fla. 2013), aff'd, 563 F. App'x 658 (11th Cir. 2014); Crume v. Metro. Life Ins. Co., 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006) (stating that when the administrative decision is reviewed for abuse of discretion, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply" (quoting Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999)).

## V. Discussion

As noted above, Plaintiff alleges her STD benefits were wrongfully terminated under 29 U.S.C. § 1132(a). Amended Complaint at 1.[13] In the Motion for Summary Judgment, Defendants argue they are "entitled to judgment as a matter of law because Plaintiff knowingly and voluntarily executed a Release Agreement on April 2, 2010 waiving all ERISA claims that she had or might have had." Motion for Summary Judgment at 1-2. Alternatively, they argue that "even assuming, arguendo, that Plaintiff did not knowingly and voluntarily waive the instant ERISA claim . . . the decision to deny Plaintiff's STD claim was not arbitrary and capricious." Id. at 2. The undersigned discusses these arguments and the law applicable to each in turn.

---

[13]    In discussing money damages, Plaintiff alleges that she was terminated before she had an opportunity to apply for long-term disability ("LTD") benefits. See Amended Complaint at 2 (section VIII of Complaint). In raising her claims, however, Plaintiff addresses the denial of STD benefits but does not address her inability to obtain LTD benefits. See id. at 2 (section VI of Complaint). Further, Plaintiff does not assert she is bringing an action for wrongful interference with the exercise of ERISA rights. See 29 U.S.C. § 1140. Rather, she specifically alleges that the basis for her claim is ERISA § 502(a), 29 U.S.C. § 1132(a). See Amended Complaint at 1. In any event, Plaintiff would not be entitled to LTD benefits because, as noted, she did not receive STD benefits for twenty-six weeks. See Plan Description at 6 (stating that a Plan participant "may be eligible for Company-Provided [LTD] Benefits at the end of the [twenty-six]-week period of [STD] Benefits"), 21-23. Accordingly, the undersigned does not address the issue regarding Plaintiff's eligibility for LTD benefits.

**A. Waiver of Claim**

A beneficiary of an ERISA plan may bring an action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Additionally, a beneficiary may seek relief for breach of a fiduciary obligation for "any act or practice which violates any provision of [ERISA] or the terms of the plan." Id. § 1132(a)(3).

The United States Court of Appeals for the Eleventh Circuit has held that releases of certain federal statutory rights must be knowing and voluntary. See Myricks v. Fed. Reserve Bank of Atlanta, 480 F.3d 1036, 1040 (11th Cir. 2007) (release of Title VII claim); Puentes v. United Parcel Serv., Inc., 86 F.3d 196, 198 (11th Cir. 1996) (release of Title VII and 42 U.S.C. § 1981 claims). To determine whether a release was knowing and voluntary, courts evaluate the totality of the circumstances surrounding the signing of the release and consider the following factors:

> (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had to consider the agreement before signing it; (3) the clarity of the agreement; (4) the plaintiff's opportunity to consult with an attorney; (5) the employer's encouragement or discouragement of consultation with an attorney; and (6) the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

Bacon v. Stiefel Labs., Inc., 09-21871-CV-KLNG, 2011 WL 4944122, at *4 (S.D. Fla. Oct. 17, 2011) (unpublished) (citing Myricks, 480 F.3d at 1040; Puentes, 86 F.3d at 198). At least two district courts in the Eleventh Circuit have applied the "knowing and voluntary" standard to releases of ERISA claims. See In re Suntrust Banks, Inc. ERISA Litig., 1:08-CV-03384-RWS,

2016 WL 4377131, at *3 (N.D. Ga. Aug. 17, 2016) (unpublished); Bacon, 2011 WL 4944122, at *4.

Defendants argue that Plaintiff's claim is barred because she knowingly and voluntarily executed a Release Agreement waiving all ERISA claims. Motion for Summary Judgment at 7-11. Defendants assert that: 1) "Plaintiff had more than sufficient education and experience to understand a release agreement"; 2) "Plaintiff had ample time—[twenty-one] days to decide whether to sign the Release Agreement, and another [seven] days during which the Release Agreement could be revoked—to consider whether she wished to waive her rights under ERISA"; 3) "the Release Agreement is a reasonably clear [seven]-page document that describes in plain language the benefits that Plaintiff would receive, as well as the various claims that Plaintiff would waive"; and 4) "Plaintiff was advised, in writing, to consult with an attorney prior to signing the Release Agreement and was afforded sufficient time (at least [twenty-one] days) to do so." Id. at 8-9.[14]

The undersigned discusses the six factors used in considering whether the signing of the release was knowing and voluntary, see Bacon, 2011 WL 4944122, at *4, and finds that they each weigh in favor of enforcing the Release Agreement.

---

[14] Defendants also state that "Plaintiff will likely attempt to invalidate the Release Agreement by alleging that the Release Agreement was procured by economic duress," and in addressing this potential argument, they contend that Plaintiff did not repudiate the Release Agreement promptly, but rather ratified it. Motion for Summary Judgment at 10-11. The undersigned does not address this argument, however, because Plaintiff bears the burden of proof to show duress, and Plaintiff has not raised this argument, much less submitted evidence to support it. See, e.g., Hartsville Oil Mill v. United States, 271 U.S. 43, 50 (1926); Devoux v. Wise, 3:12-CV-540-J-34JBT, 2014 WL 1457520, at *5 (M.D. Fla. Apr. 15, 2014) (unpublished); Anderson v. City of Crystal River, Fla., 503CV269OC10GRJ, 2006 WL 1360906, at *3 (M.D. Fla. May 18, 2006) (unpublished).

<u>1. Plaintiff's Education and Business Experience</u>

The undersigned finds that Plaintiff had sufficient education and experience to understand the Release Agreement. As noted above, Plaintiff worked as a full-time Center Sales Manager at a BellSouth inbound call center from September 2008 through the date of her termination. Crawford Declaration at 2 ¶ 5. As a Center Sales Manager, Plaintiff supervised a group of around five or six "Sales Coaches," who supervised a group of around seventy or seventy-five "Sales Associates." <u>Id.</u> at 2 ¶ 6. Her supervisory duties included "interviewing, training, assigning work to, evaluating the performance of and, when necessary, issuing discipline to her subordinates." <u>Id.</u> Plaintiff also assisted in resolving employee relations issues and participated in meetings to discuss union grievances that had been filed by employees in her "team." <u>Id.</u> Accordingly, the first factor weighs in favor of finding Plaintiff knowingly and voluntarily waived all ERISA claims against Defendants.

<u>2. Amount of Time Plaintiff Had to Consider the Agreement Before Signing It</u>

In the Release Agreement, Plaintiff acknowledged that she was "provided a period of at least twenty-one . . . days from the time [Plaintiff] received th[e Release] Agreement to consider whether to sign it." Release Agreement at 2 ¶ 4. The undersigned finds that twenty-one days was a sufficient amount of time for Plaintiff to consider whether to sign the Release Agreement. <u>See</u> <u>Puentes</u>, 86 F.3d at 199 (citing <u>Mullen v. New Jersey Steel Corp.</u>, 733 F. Supp. 1534, 1544-45 (D.N.J. 1990) (finding that fourteen days was sufficient time to knowingly and voluntarily sign a release)). Because the Release Agreement was executed in connection with her termination, Plaintiff likely received it on the day she was terminated, April 1, 2010,

or on the following day. Although Plaintiff signed the Release Agreement on April 2, 2010 (less than twenty-one days before she likely received it), she was nonetheless given twenty-one days to consider it, and she acknowledged that if she "signed th[e Release] Agreement before the end of that [twenty-one]-day period, it is because [she] freely chose to do so after carefully considering the terms of the [Release] Agreement." Release Agreement at 2 ¶ 4. Accordingly, the second factor weighs in favor of finding that Plaintiff knowingly and voluntarily signed the Release Agreement.

### 3. Clarity of Agreement

The undersigned finds the release clearly and unambiguously released all of Plaintiff's ERISA claims against BellSouth and related parties. The Release Agreement provides that Plaintiff "fully waives, discharges, and releases any and all claims of whatever nature, known or unknown, [Plaintiff] may have against BellSouth . . ., AT&T Inc., their subsidiaries and affiliated companies, and in the case of all such entities, their respective owners, representatives, officers, directors, insurers, attorneys, agents, employees, successors and assigns . . . as a result of actions or omissions occurring through the date th[e Release] Agreement is executed." Id. at 2 ¶ 4. The Release Agreement specifies that "included in this waiver and release are . . . any and all other claims under . . . [ERISA]." Id. at 2-3 ¶ 4. This language clearly releases all of Plaintiff's ERISA claims against Defendants. Thus, the third factor weighs in favor of finding a knowing and voluntary waiver.

### 4. Plaintiff's Opportunity to Consult with an Attorney

The Release Agreement advises Plaintiff "to consult with an attorney prior to signing" it and provides Plaintiff with twenty-one days to do so. Id. at 2 ¶ 4. The undersigned finds that twenty-one days was a sufficient amount of time to consult with an attorney before deciding to sign the Release Agreement. See Puentes, 86 F.3d at 199 (citing Mullen, 733 F. Supp. at 1544-45 (D.N.J. 1990) (finding that fourteen days was sufficient time to consult with an attorney before signing a release)). Thus, the fourth factor weighs in favor of finding that Plaintiff knowingly and voluntarily signed the Release Agreement.

### 5. Bellsouth's Encouragement of Consultation with an Attorney

The undersigned finds that BellSouth encouraged consultation with an attorney by advising Plaintiff in writing to consult with an attorney prior to signing the Release Agreement. See Release Agreement at 2 ¶ 4. Accordingly, the fifth factor weighs in favor of finding that the release of Plaintiff's claims was knowing and voluntary.

### 6. Consideration Given in Exchange for Waiver Compared with Benefits Plaintiff Was Entitled to

In exchange for signing the Release Agreement, Plaintiff received monetary consideration to which she would otherwise not have been entitled. As previously noted, Plaintiff received $23,692.82 as severance pay in exchange for signing the Release Agreement. Id. at 1 ¶ 2. Plaintiff acknowledged that "absent th[e Release] Agreement, [Plaintiff] would not be entitled to such severance pay under the Company's existing policies." Id. Plaintiff also acknowledged that "the incentives that are provided under the terms of the

-14-

[Release] Agreement represent valuable consideration." Id. at 2 ¶ 4. Thus, the sixth and final factor weighs in favor of finding that the release was knowing and voluntary.

Based upon consideration of these six factors, Defendants are entitled to summary judgment because Plaintiff knowingly and voluntarily waived all ERISA claims against Defendants. Even if Plaintiff's claim is not barred by the Release Agreement, Defendants are nonetheless entitled to summary judgment because the denial of Plaintiff's STD benefits was not arbitrary and capricious.

## B. STD Benefit Denial

The Eleventh Circuit established the following "multi-step framework to guide courts in reviewing an ERISA plan claims administrator's benefits decisions":

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Blankenship v. Metro. Life. Ins. Co., 644 F.3d 1350, 1354, 1355 (11th Cir. 2011).

Although "[a]ll steps of the analysis are 'potentially at issue' when a plan vests discretion to the [claims] administrator to make benefits determinations," Howard, 929 F. Supp. 2d at 1287 (quoting Blankenship, 644 F.3d at 1356 n.7), "some courts have begun their analysis by assuming the [claims] administrator's decision was wrong," thus "bypass[ing] the de novo right or wrong determination, and proceed[ing] directly to an arbitrary and capricious analysis," id. at 1287 n.19; see also Till v. Lincoln Nat'l Life Ins. Co., 182 F. Supp. 3d 1243 (M.D. Ala. 2016); Barchus v. Hartford Life and Accident Insur. Co., 320 F. Supp. 2d 1266, 1285 (M.D. Fla. 2004).

Under ERISA, a plaintiff challenging a denial of benefits has "the burden of showing that he is entitled to the 'benefits . . . under the terms of his plan.'" Stvartak v. Eastman Kodak Co., 945 F. Supp. 1532, 1536 (M.D. Fla. 1996) (quoting 29 U.S.C. § 1132(a)(1)(B)), aff'd, 144 F.3d 54 (11th Cir. 1998) . "When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard . . . , the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the [claims] administrator at the time the decision was made." Jett v. Blue Cross & Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989). "As long as the decision had a reasonable basis, it 'must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary conclusion.'" Moeller v. Guardian Life Ins. Co. of Am., No. 5:10-cv-457-Oc-34TBS, 2011 WL 7981954, at *6 (M.D. Fla. Dec. 16, 2011) (unpublished Report and Recommendation) (quoting White v. Coca-Cola Co., 542 F.3d 848, 856 (11th Cir. 2008)), adopted, 2012 WL 1986591 (M.D. Fla. June 4, 2012). "[A claims] administrator is

entitled to weigh the evidence and resolve conflicting evidence about the claimant's disability."

Delta Family-Care Disability & Survivorship Plan, 295 F. App'x. 971, 977 (11th Cir. 2008) (citing Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1452 (11th Cir. 1997)). Even if the "evidence is close," a claims administrator does not abuse its discretion in resolving conflicting evidence. Doyle v. Liberty Life Assur. Co. of Boston, 542 F.3d 1352, 1363 (11th Cir. 2008).

Additionally, there is a "fundamental requirement that a[ claims] administrator's decision to deny benefits must be based on a complete administrative record that is the product of a fair claim-evaluation process." Melech v. Life Ins. Co. of N. Am., 739 F.3d 663, 676 (11th Cir. 2014); see also 29 U.S.C. § 1133(2) (requiring ERISA plans to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim"). When a claims administrator's decision to deny benefits was based on an incomplete administrative record, "the proper course of action is to remand [the] claim to [the claims administrator]." Melech, 739 F.3d at 376 (citing Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321, 1330 (11th Cir. 2001)).

Here, it is clear that the AT&T Plan vests Sedgwick with discretion to interpret it and determine benefits eligibility (step two of the analysis). See Plan Description at 14, 16, 32. Accordingly, the undersigned assumes, without deciding, that Sedgwick's decision to terminate Plaintiff's STD benefits was de novo wrong (step one of the analysis) and proceeds directly to consider whether the decision was arbitrary and capricious (step three of the analysis). See Howard, 929 F. Supp. 2d at 1287 n.19.

1. Step Three: Reasonable Grounds for Denial

As noted above, under step three of the analysis, the Court must review the claims administrator's decision under the arbitrary and capricious standard and determine whether "reasonable grounds" supported it. Blankenship, 644 F.3d at 1355. In doing so, the Court is "limited to deciding whether the [claims administrator's] interpretation of the plan was made rationally and in good faith." Cagle v. Bruner, 112 F.3d 1510, 1518 (11th Cir. 1997). The claims administrator's decision "need not be the best possible decision, only one with a rational justification." Griffis v. Delta Family-Care Disability, 723 F.2d 822, 825 (11th Cir. 1984). "As long as a reasonable basis appears for [the claims administrator's] decision, it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." Jett, 890 F.2d at 1140.

Determining whether a benefit denial was reasonable requires the Court to consider the evidence available to the claims administrator at the time of the denial. Blankenship, 644 F.3d at 1354. "For purposes of judicial review, the relevant date is the date [the claims administrator's] decision became final upon the conclusion of its administrative review[.]" Bayer v. Reliance Standard Life Ins. Co., 14-23934-CIV, 2016 WL 2622300, at *9 (S.D. Fla. Apr. 11, 2016) (unpublished), appeal dismissed (Aug. 31, 2016) (citing Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1246-47 (11th Cir. 2008); Cooper v. Hewlet-Packard Co., 592 F.3d 645, 653 (5th Cir. 2009)). Thus, the Court may consider evidence acquired after the claims administrator's initial decision to deny benefits is made but before its final determination on administrative appeal. See id.; Cooper, 592 F.3d at 653.

In evaluating a participant's medical evidence, a claims administrator "need not accord extra respect to the opinions of a claimant's treating physicians." Blankenship, 644 F.3d at 1356. "Even where [the participant's] own doctors offered different medical opinions than . . . [the] independent doctors, the [claims] administrator may give different weight to those opinions without acting arbitrarily and capriciously." Id.

Here, to receive STD benefits under the AT&T Plan, a participant must be either partially or totally disabled. See Plan Description at 14. The AT&T Plan provides the following:

> You are considered Totally Disabled when, because of Illness or Injury, you are unable to perform all of the essential functions of your job or another available job assigned by your Participating Company with the same full-time or part-time classification for which you are qualified.
>
> . . . .
>
> You are considered Partially Disabled when, because of Illness or Injury, you are unable to perform all of the essential functions of your job or another available job assigned by your Participating Company within the same full-time or part-time classification for which you are qualified, for the same number of hours that you were regularly scheduled to work before your Partial Disability. No Short-Term Disability Benefits will be paid if you do not return to work when you are approved as Partially Disabled.

Id. at 15.

According to the Administrative Record, Plaintiff alleged that her disability was a result of pulmonary hypertension. AR at 87. All three physicians who reviewed Plaintiff's medical records on appeal opined that Plaintiff was not disabled. See AR at 270, 286, 293 (duplicate) (Dr. Sonne); 276, 288, 291 (duplicate) (Dr. Perez); 283, 298 (duplicate), 303 (Dr. Bellinger).

Dr. Sonne is board certified in internal medicine and pulmonology. AR at 272, 287, 294. On May 5, 2010, Dr. Sonne opined that Plaintiff was "not disabled from performing the duties

of her job from [February 25, 2010] through [April 1, 2010]." AR at 270.[15] Dr. Sonne noted that Plaintiff's "main problem was morbid obesity and heart disease" and that "there is no documentation of any separate pulmonary issue, except for the effects of morbid obesity," or "of any parenchymal disease, except for her admission for pneumonia on [December 12, 2009] . . . ." AR at 271. He indicated Plaintiff's "pulmonary function studies on [February 5, 2010] were consistent with morbid obesity." AR at 271. He noted that Plaintiff "had a CAT scan of her chest which showed no pulmonary embolism." AR at 271. Dr. Sonne's notes also indicate that Plaintiff's treating physician, Dr. Jose Gultian, agreed with Dr. Sonne that Plaintiff "did not have primary pulmonary hypertension at all." AR at 271. Dr. Sonne concluded that "[t]here is no objective documentation of any pulmonary . . . restriction, limitation, or impairment that would preclude full-time work at her regular job from [February 25, 2010] through [April 1, 2010]." AR at 271.

Dr. Perez is board certified in internal medicine. AR at 277, 289, 292. On May 5, 2010, Dr. Perez opined that "[f]rom an internal medicine perspective, [Plaintiff] was not disabled from the duties of her job from [February 25, 2010] through [April 1, 2010]." AR at 276.[16] He stated Plaintiff "has a history of hypertension and nodular thyroid," but that "[t]here is no evidence, based on these diagnoses, that [Plaintiff] ha[d] an inability to work from [February 25, 2010]

---

[15]    As previously noted, on May 21, 2010, Dr. Sonne gave another opinion. <u>See</u> AR at 286-87, 293-94 (duplicate). In that opinion, he stated that the added job description and the adjusted relevant time frame of February 25, 2010 "through the present" did not alter his May 5, 2010 opinion. AR at 286, 293 (duplicate).

[16]    As previously noted, on May 21, 2010, Dr. Perez gave another opinion. <u>See</u> AR at 288-89, 291-92 (duplicate). In that opinion, he stated that the added job description and the adjusted relevant time frame of February 25, 2010 "through the present" did not alter his May 5, 2010 opinion. AR at 286, 291 (duplicate).

through [April 1, 2010]." AR at 276. He also found that "there is no testing that supports [Plaintiff's] subjective complaints." AR at 277. Thus, he concluded "[t]he findings do not support an inability of [Plaintiff] to perform her regular job duties from [February 25, 2010] through [April 1, 2010]." AR at 277.

Dr. Bellinger is board certified in internal medicine, cardiovascular disease, and nuclear cardiology. AR at 284, 299, 304. On May 21, 2010 and May 25, 2010, Dr. Bellinger opined that Plaintiff was "not disabled from any type of work as of [February 25, 2010] through present." AR at 283, 298 (duplicate), 303. He noted that "[c]ardiac catheterization was performed on [February, 23, 2010,] which documented no clinically significant evidence of obstructive coronary disease, normal left ventricular function and size, and mild-to-moderate pulmonary hypertension." AR at 283, 298 (duplicate), 303. He opined that "[t]he medical record does not document any other significant cardiovascular findings." AR at 283, 298 (duplicate), 303. Accordingly, he concluded that "[o]n a cardiovascular basis, the findings are not considered significant and would not limit or restrict [Plaintiff's] ability to perform her own occupation." AR at 303, see also AR at 283, 298 (duplicate) (May 21, 2010 note stating no limitations on Plaintiff's "ability to perform any level of work").

The opinions of Dr. Sonne, Dr. Perez, and Dr. Bellinger provide reasonable grounds for Sedgwick's decision to deny Plaintiff's STD benefits. See Keith v. Prudential Ins. Co. of Am., 347 F. App'x. 548, 552 (11th Cir. 2009) (unpublished) (noting that a claims administrator "thoroughly investigated [a] claim" where it considered the evidence and "obtained the opinions of three different medical professionals"). Plaintiff did not identify or submit any

evidence that contradicts Sedgwick's decision to deny Plaintiff's benefits. Thus, the Court finds that reasonable grounds support Sedgwick's decision to deny Plaintiff's STD benefits.

      2. Step Four: Conflict of Interest

      When a court determines that there were reasonable grounds for the denial of benefits, "[t]he only remaining step in the . . . analysis [is] to determine whether" the claims administrator had a conflict of interest and whether this conflict "tainted [the claims administrator's] decision, thereby rendering its otherwise reasonable decision unreasonable." Doyle, 542 F.3d at 1360. "[T]he existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether a[ claims] administrator's decision was arbitrary and capricious." Id. "No conflict of interest exists where benefits are paid from a trust that is funded through periodic contributions so that the [the claims administrator] incurs no immediate expense as a result of paying benefits." Gilley v. Monsanto Co., Inc., 490 F.3d 848, 856 (11th Cir. 2007). "[W]here [the claims administrator] neither incurs a direct expense in paying benefits nor directly profits from denying or discontinuing benefits, there is no conflict of interest." Id. at 857.

      Here, as previously noted, benefits under the AT&T Plan are paid from a trust that is funded by participating AT&T companies. Siegel Declaration at 3 ¶ 7. Sedgwick does not make any contributions to the trust, nor does it pay benefits from its assets. Id. at 2-3 ¶ 7. Thus, the undersigned finds that Sedgwick did not operate under any conflict of interest when it made the decision to deny Plaintiff's STD benefits. See Gilley, 490 F.3d at 856-57.

### VI. Conclusion

The undersigned finds Defendants are entitled to summary judgment because there is no genuine dispute of material fact as to whether Plaintiff knowingly and voluntarily waived all ERISA claims against Defendants. Alternatively, Defendants are entitled to summary judgment because Sedgwick's decision to deny Plaintiff's STD benefits was not arbitrary and capricious. Accordingly, it is

**RECOMMENDED**:

1.      That Defendants' Motion for Summary Judgment, Statement of Undisputed Facts and Incorporated Memorandum of Law (Doc. No. 58) be **GRANTED**.

2.      That Defendants' Motion to Deem Unopposed Defendants' Motion for Summary Judgment (Doc. No. 60) be **GRANTED**.

3.      That the Clerk be directed to enter judgment in favor of Defendants.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on January 10, 2018.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

bhc
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

Pro se Party

-23-